**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIAN GRAY,** | : |
| **Plaintiff** | : |
| | : **CIVIL ACTION NO. 3:13-CV-1232** |
| **v.** | : |
| | **(JUDGE MANNION)** |
| **ALLSTATE INDEMNITY CO.,** | : |
| **Defendant** | : |

**M E M O R A N D U M**

The plaintiff is proceeding on his amended complaint asserting a breach of contract claim and a bad faith claim due to defendant's alleged wrongful denial and refusal to pay insurance benefits for his fire loss claim. (Doc. 14). After discovery, defendant filed a motion for summary judgment regarding both of plaintiff's claims. (Doc. 30). The court will **GRANT** defendant's motion with respect to plaintiff's bad faith claim and, it will **DENY** the motion with respect to plaintiff's breach of contract claim.

I.     **PROCEDURAL BACKGROUND**

Plaintiff Brain Gray initially brought this suit in the Court of Common Pleas of Lackawanna County on March 27, 2013, seeking to obtain coverage under his insurance policy with Allstate Indemnity Company ("Allstate"). On May 6, 2013, Allstate removed the case to this court pursuant to 28 U.S.C.

§1441(a) and §1332(a)(2), since Plaintiff is a resident of Pennsylvania and Allstate is an Illinois corporation. (Doc. 1).

On June 12, 2013, Allstate filed a motion to dismiss plaintiff's complaint. (Doc. 4). On July 12, 2013, plaintiff filed an amended complaint seeking damages for Allstate's failure to pay his alleged covered loss. (Doc. 14). On July 17, 2013, Allstate filed its answer and affirmative defenses to Plaintiff's amended complaint. (Doc. 16).

On June 30, 2014, after discovery was completed, Allstate filed a summary judgment motion, pursuant to Fed.R.Civ.P. 56, with attached exhibits. (Doc. 30). Allstate contends that since the subject property was vacant and unoccupied from the time the last tenant left the property in April 2012, until the time of the vandalism and resulting fire on August 27, 2012, as a matter of law, it does not owe coverage for the fire loss claim of plaintiff. Allstate simultaneously filed its brief in support. (Doc. 31). After being granted an extension of time, plaintiff filed his brief in opposition on July 31, 2014, and argues that issues of fact exist as to whether the language of the policy was ambiguous and whether the subject property was unoccupied and vacant during the relevant times of this case. (Doc. 34). Allstate filed its statement of material facts, pursuant to Local Rule 56.1, M.D.Pa., on August 13, 2014, and

on September 22, 2014, plaintiff filed his response. (Doc. 35. Doc. 36).

Allstate's motion for summary judgment is ripe for disposition. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332. Venue is proper in this court since plaintiff alleges that all of the events giving rise to his claims occurred in this judicial district. 28 U.S.C. §1391.

## II.   FACTUAL BACKGROUND

Early on August 27, 2012, vandals broke into plaintiff's commercial rental property located at 333-335 South Hyde Park Avenue, Scranton, Pennsylvania ("subject property"). The vandals started a fire in plaintiff's 2-story residential apartment unit located on the left side at 335 South Hyde Park. During all relevant times, plaintiff owned the subject property and it was insured by Allstate under a Landlords Package Policy, Policy No. 928 557662. (Doc. 30-8). Plaintiff submitted a fire loss claim, Claim Number 0257919043 WJH, for the August 27, 2012, damage to his property. On December 12, 2012, Allstate denied coverage for plaintiff's claim. (Doc. 30-9). Plaintiff's insurance policy had a fire policy endorsement precluding coverage for fire losses caused by vandalism if the property was vacant or unoccupied for more than 90 consecutive days before the vandalism, and precluding

3

coverage for any loss occurring while the property is vacant or unoccupied beyond 60 consecutive days. Allstate contends that at the time of the fire, the subject property was vacant and unoccupied since mid- April of 2012 and, as such, the insurance policy does not cover the damage caused by arson. Plaintiff asserts that the subject property was neither unoccupied nor vacant and that the policy is ambiguous as to these terms. Plaintiff states that he was continually in the subject property since he was reconstructing, refurbishing and updating the units, and that his equipment was present in the units. Plaintiff also points out that his property manager was showing the rental units to prospective tenants during the relevant time.

Plaintiff then commenced the present case on March 27, 2013, raising claims of breach of contract and bad faith, and alleging the wrongful denial and refusal to pay his insurance claim for his fire loss. The pleadings are closed and discovery has been completed.

4

### III.  MATERIAL FACTS[1]

This action involves a claim submitted by plaintiff for insurance proceeds following a fire loss that occurred at a property that plaintiff owned. The subject property is a commercial rental property located at 333-335 South Hyde Park Avenue, Scranton, Pennsylvania. At all relevant times, plaintiff was the owner-landlord of the subject property and the property was insured by Allstate under an AS84 Landlords Package Insurance Policy No. 928557662. Plaintiff resided at 400 Royal Oak Drive, South Abington, Pennsylvania. Plaintiff never resided at the subject property. The subject property was a commercial rental property consisting of three separate apartment units. The tenants in all three rental units in the subject property moved out as of April 16, 2012, and plaintiff began to rehabilitate, update, and reconstruct the property. The parties dispute whether the subject property was vacant and unoccupied as of April 16, 2012, and plaintiff states that he continuously occupied the property while he rehabilitated it. Plaintiff also states that the property manager Peter Lamandre was continuously present at the property

---

[1]

Unless otherwise noted, the facts are taken from the parties' statements of material facts and the exhibits submitted. (Doc. 35, 36. Doc. 30-2 to 30-9). Disputed facts are noted.

since he was showing the rental units to prospective new tenants and supervising the construction work for plaintiff. In the early morning hours of August 27, 2012, three or four adolescent vandals broke into the subject property and set the 2-story residential apartment unit, located on the left side of the property, on fire.

The AS84 Landlords Package Insurance Policy No. 928 557662, provided insurance coverage to the subject property for covered casualty losses and was effective from November 25, 2011 to November 25, 2012. (Doc. 30-8). Plaintiff also states that the policy was in good standing at the time of the fire and that he continued to make all premium payments on the policy. Pursuant to the AS84 Policy provisions, Allstate does not provide coverage for fire losses caused by vandalism if the dwelling has been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism. Allstate denied plaintiff's claim on December 12, 2012, based on the above provision. (Doc. 30-9). Plaintiff states that his fire loss claim should have been covered by Allstate since his property was neither vacant nor unoccupied for more than 90 consecutive days immediately prior to the vandalism. Plaintiff also states that the terms "vacant" and "unoccupied" were not defined in the policy which was written by Allstate. Plaintiff further states

that it is a question of law as to how these terms should be interpreted, and that these terms are ambiguous.

The Allstate policy which plaintiff purchased also included an AU277-2 Fire Policy Endorsement, providing that Allstate is not liable for any loss occurring "while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of [60] consecutive days ... ." Plaintiff again points out that the subject property was not vacant or unoccupied at the relevant time. The parties dispute whether at the time of the fire on August 27, 2012, the subject property was vacant and unoccupied since at least April of 2012. Plaintiff contends that his continuous presence at the subject property, after the tenants moved out in April of 2012, to personally rehabilitate and rebuild parts of the property rendered the property occupied and not vacant for purposes of coverage on his fire loss claim.

Subsequent to the fire loss on August 27, 2012, plaintiff retained Metro Public Adjustment, Inc. ("Metro") to adjust the loss caused to plaintiff's property and for the purposes of negotiating an insurance settlement with Allstate. After Metro adjusted the loss, Metro submitted a claim to Allstate seeking to have Allstate tender the applicable policy limit in satisfaction of plaintiff's casualty loss. On December 12, 2012, Allstate sent a formal written

notice to Metro denying coverage for plaintiff's claim based on the language of the policy vacancy clause. Specifically, Allstate stated that the policy did not provide coverage for plaintiff's claim since it excluded coverage for damage caused by vandalism if the subject property was vacant or unoccupied for more than 90 days immediately preceding the vandalism. (Doc. 30-9). Plaintiff claims that the denial of coverage by Allstate was improper and not reasonably based on the law and, that the clause was vague and ambiguous. Thus, plaintiff states that Allstate breached the insurance contract by failing to pay his claim and, that his claim was denied by Allstate in bad faith.

Allstate argues that it is entitled to summary judgment regarding both of plaintiff's claims related to his fire loss since coverage is barred under the policy's vacancy clause. There is no dispute that plaintiff's August 27, 2012 fire loss was caused by vandalism, however, it is disputed whether the subject property was vacant or unoccupied for the required period of time before the loss.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Moreover, the Third Circuit indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party

must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007) (citation omitted). A material factual dispute is one that may affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial."

Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007); Watson v. Eastman Kodak Co., 235 F.3d 851, 858 (3d Cir. 2000) (the non-movant must establish the existence of each element on which it bears the burden of proof).

## V.    DISCUSSION

### 1.    <u>Breach of Contract</u>

In making an insurance policy coverage determination, the court must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they would fall within the scope of the policy if proven. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa. Super. 55, 59, 639 A. 2d 1208 (1994) (citation omitted). Further, under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to decide. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citation omitted); Hunyady v. Aetna Life & Casualty, 396 Pa.Super. 476, 479, 578 A.2d 1312, 1313 (1990).[2]

---

[2]

Pennsylvania substantive law is utilized in this diversity case as this court sits in Pennsylvania. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).Thus, the court shall apply Pennsylvania law with respect to the insurance coverage issue as the events in question all occurred in

The Court in *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 198

(3d Cir. 2006), stated:

> [I]n Pennsylvania a court construes ambiguities in an
> insurance policy strictly against the insurer. *See, e.g.,*
> *Selko v. Home Ins. Co.*, 139 F.3d 145, 152 n. 3 (3d
> Cir. 1998) (*citing Standard Venetian Blind Co. v. Am.*
> *Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa.
> 1983)). Nevertheless, in Pennsylvania, and no doubt
> elsewhere, "[c]lear policy language . . . is to be given
> effect, and courts should not torture the language to
> create ambiguities but should read the policy
> provisions to avoid it." *Selko*, 139 F.3d at 152 n. 3
> (internal citations and quotation marks omitted). In
> construing policy language, courts should consider
> any special usage "[w]here terms are used in a
> contract which are known and understood by a
> particular class of persons in a certain special or
> peculiar sense [.]" *Sunbeam Corp. v. Liberty Mut. Ins.*
> *Co.*, 566 Pa. 494, 781 A.2d 1189, 1193 (Pa. 2001)."

In *Hollingsworth v. State Farm Fire & Cas. Co.*, 2005 WL 543414, *5

(E.D. Pa. 2005) (footnote omitted), the court stated as follows:

> Under Pennsylvania law, interpretation of a policy
> exclusion is a question of law for the court, *Allstate*
> *Ins. Co. v. Davis*, 977 F.Supp. 705, 711 (E.D. Pa.
> 1997), and "the goal . . . is to ascertain the intent of
> the parties as manifested by the language of the

---

Pennsylvania, the policy was issued in Pennsylvania, the policy contained
Pennsylvania Notices, and it was delivered, *via* the Siegfried Agency in
Scranton, Pennsylvania, to Plaintiff. The policy also provided that it was
issued in accordance with the laws of the state in which the premises was
located. (Doc. 30-8, at 24). The court notes that the parties also correctly
argue Pennsylvania law in their briefs.

written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983). A court is required to give effect to a policy exclusion if the exclusion is clearly worded and conspicuously displayed in the policy. *Giangreco v. United States Life Ins. Co.*,168 F. Supp.2d 417, 421 (E.D. Pa. 2001). However, ambiguous policy exclusions are "always strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir. 1998)). A policy exclusion is ambiguous if "reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning, and if more precise language could have eliminated the ambiguity." *Corgis Ins. Co. v. Larocca*, 80 F.Supp.2d 452, 455 (E.D. Pa. 1999) (internal citations omitted). The insurer bears the burden of establishing the applicability of an exclusion under an insurance policy. *Cosenza*, 258 F.3d at 206.

The initial burden of establishing coverage under an insurance policy rests with the insured. *Id*. at n. 1 (citation omitted). However, Allstate "bears the burden of establishing the applicability of an exclusion under an insurance policy." Cosenza, 258 F.3d at 206.

The Allstate policy purchased by plaintiff contained a vacancy clause in Policy Form AS84. This policy provision provided as follows:

"Vandalism. However, we do cover sudden and accidental direct physical loss caused by fire resulting from vandalism unless your dwelling has been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism." (Doc. 30-8,

at 28).

The Standard Fire Policy Endorsement in plaintiff's policy, AU277-2, provided that Allstate "shall not be liable for loss occurring [] while a described building, whether intended for occupancy by owner or tenant is vacant or unoccupied beyond a period of [60] consecutive days." (Doc. 30-8, at 49, lines 28-35).

The policy defined the term "property damage" as "physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction." (Doc. 30-8, at 22). "Vandalism" was defined as "willful or malicious conduct resulting in damage or destruction of property." (Id.). As plaintiff states, there is no dispute that the policy did not define the terms "vacant" and "unoccupied."

The court agrees that "the vacancy clause in Policy Form AS84 ..., unambiguously provides that Allstate will not cover fire losses resulting from vandalism if the dwelling was vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism." (Doc. 31, at 7). The court also agrees that "Endorsement AU277-2 is even more restrictive, providing that Allstate shall not be liable for losses occurring while the subject building, whether intended for occupancy by owner or tenant or not, is vacant

14

or unoccupied beyond a period of sixty consecutive days." (Id.). Plaintiff does not contest the stated provisions in his Allstate policy. (Doc. 36, at 4). The evidence is also undisputed that plaintiff's property was damaged by vandalism which lead to the August 27, 2012 fire. However, the parties dispute whether the subject property was vacant and unoccupied for a period in excess of 90 consecutive days prior to the vandalism which caused the fire. Allstate contends that the subject property was vacant and unoccupied since mid-April of 2012, when plaintiff's tenants moved out. Plaintiff contends that since he was continuously at the subject property after his tenants moved out to personally refurbish and reconstruct it, the property was neither vacant nor unoccupied. As discussed below, the court finds that the terms vacant and unoccupied as used in the policy are ambiguous and, that the facts are disputed as to whether plaintiff was sufficiently present at the subject property after his tenants moved out to render the property neither vacant nor unoccupied.

Allstate concedes that there are no Pennsylvania cases which define the terms of vacant and unoccupied when presented with provisions similar to those at issue in this case. (Doc. 31, at 8). See Hollingsworth v. State Farm Fire & Cas. Co., 2005 WL563414, *6 (E.D.Pa. March 9, 2005) ("the Court's

independent research has not uncovered[] any Pennsylvania decisions which definitively interpret the meaning of the term "vacant" in the context of an insurance policy which denies coverage for vandalism on insured property if the property is "vacant" for 30 days prior to the incident of vandalism."). However, for support, Allstate cites to Kinneer v. Southwestern Mut. Fire Ass'n, 118 Pa.Super. 312, 179 A. 800 (Pa.Super. 1935), affirmed by 322 Pa. 100, 185 A. 194 (1936). (Doc. 31, at 10). The court finds that this Pennsylvania case which discussed the meaning of the terms "vacant" and "unoccupied" as used in a fire insurance policy, while instructive, is not determinative of the present case in light of the Third Circuit's more recent decision in Chowdhury v. LMI Ins. Co., 107 F.3d 6 (3d Cir. 1997). Thus, while Allstate's interpretation of the terms vacant and unoccupied has support from *Kinneer, Chowdhury* is "the precedent governing law which applies to this case." (Doc. 34, at 3). In *Chowdhury*, Third Circuit evaluated the meaning of the term "vacant" with respect to an insurance policy that precluded coverage for vandalism on the rental property covered by the policy if the property was vacant for 30 days prior to the vandalism. Id. at *1. The Third Circuit found that the term "vacant" as used in the insurance contract was vague and unenforceable.

"When interpreting the terms of an insurance contract the court must generally attempt to effectuate the intent of the parties as manifested by the language of the written instrument." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001) (citations omitted).

The rules of contract interpretation must be applied in analyzing an insurance policy. As the Court stated in *State Farm v. Dunleavy*, 197 F. Supp. 2d 183, 186-87 (E.D. Pa. 2001), the following rules govern the interpretation of a policy:

> The interpretation of an insurance policy is governed by the following rules of contract interpretation: 1) terms must be given their ordinary meaning; 2) ambiguous terms should be construed against the insurer; 3) "a term is ambiguous only if 'reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning;'" and 4) the parties' "true intent must be determined not only from the language but from all the surrounding circumstances." *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982 (1986) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389, 392 (1986)); *See also Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 585, 326 A.2d 346 (1974) (citing *Burne v. Franklin Life Insur. Co.*, 451 Pa. 218, 226, 301 A.2d 799 (1973)) ("Furthermore, where the contact is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.").

In light of *Chowdhury* and based on the facts of the present case, the

17

terms vacant and unoccupied are ambiguous. As stated, a policy exclusion is ambiguous if "reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning, and if more precise language could have eliminated the ambiguity." *Corgis Ins. Co. v. Larocca*, 80 F.Supp.2d at 455. Further, a policy exclusion which is ambiguous is "always strictly construed against the insurer and in favor of the insured." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d at 206-07. The policy in the present case could have simply defined the terms vacant and unoccupied, with reference to the vacancy clauses, however, Allstate did not define the two terms at all in the policy. The court thus finds that more precise language in the policy by Allstate could have eliminated the ambiguity.

The court also finds that the vacancy clauses at issue and the terms "vacant" and "unoccupied" as used in the policy's stated provisions may be reasonably interpreted to support the positions of both parties and can be subject to more than one interpretation. The plaintiff's undisputed presence in the subject property after the tenants left the units, to refurbish them, as well as the presence of his property manager who was showing the units to prospective new tenants creates issues of fact for the jury to resolve as to whether the property was continually vacant or unoccupied during the

required time period before the loss or whether the insurance policy was voided under the vacancy clauses. Thus, in light on the record, there are genuine issues of material fact as to whether the subject property was vacant or unoccupied for a period in excess of 90 consecutive days prior to the vandalism which caused the August 27, 2012 fire.

The district court in *Chowdhury* "held that Chowdhury's property was 'vacant', for purposes of the vandalism exclusion provision, due to the fact that the 'property did not contain a significant amount of furniture or other items." 107 F.3d at *2. The Third Circuit in *Chowdhury* found that the district court improperly construed the term "vacant", which was not defined in the policy, to deny the insured's claim for coverage. *Id*. at *3. Thus, even though the policy in *Chowdhury* only dealt with a vacant dwelling, the facts are quite similar to the facts of this case and Allstate's attempt to distinguish them is unconvincing. As plaintiff states, "at the heart of the *Chowdhury* matter was a commercial insurance policy which contemplated gaps in occupancy", (Doc. 34, at 6), and the Third Circuit stated, "[t]he fact that the insurance contract was for *rental* property (thus contemplating gaps between the leases of tenants) clouds the issue even further." 107 F.3d at *3. The Third Circuit also stated that if the insurance company "desired a particular meaning, or a

particular definition, or particular boundaries to be given to the term 'vacant',

it could have so provided in its policy." Id.

When the Third Circuit decided *Chowdhury*, the "Standard Fire

Insurance Policy of the State of Pennsylvania" had to contain a standard

vacancy clause provision pursuant to Pursuant to 40 P.S. §636(2), which

provided:

> Conditions suspending or restricting insurance.
> Unless otherwise provided in writing added hereto this
> Company shall not be liable for the loss occurring (a)
> while the hazard is increased by any means within the
> control or knowledge of the insured; or (b) while a
> described building, whether intended for occupancy
> by owner or tennant (sic), is vacant or unoccupied
> beyond a period of sixty consecutive days ...

Nonetheless, the Third Circuit in *Chowdhury* resolved the meaning of

the term "vacant", undefined in the insurance contract, "is ambiguous in both

the insurance contract and everyday meaning." The Third Circuit found "the

district court erred in holding that, as a matter of law, the property at issue,

which contained various household appliances and utilities, and was

undergoing repairs in preparation for its new occupants, was 'vacant' and that

coverage was barred." 107 F.3d at *1. As such, *Chowdhury* is clear precedent

on this court, with facts that are quite similar to those in the instant case. (*See*

Doc. 34, at 4-5).

20

Additionally, there is evidence to show that plaintiff had "personally, consistently, and frequently visited the [property] because he was doing repair work on it[]" and that [h]e had a continuous presence in all of the apartments, even spending nights there because he and his wife had marital disputes." Plaintiff also points out that he "is a contractor so he personally rehabbed (sic) the apartment units and personally brought his materials over to the property on a continuous basis." (Id., at 4). While Allstate disputes the amount of time plaintiff was present at the subject property after his tenants moved out in mid-April 2012, and whether plaintiff returned to work on the property in early August after his surgery, prior to the fire, the court finds that these are disputed issues of fact for the jury to resolve.

Plaintiff also points out that the insurance policy which Allstate issued had other sections which contained more specific provisions than the ones at issue, such as page 12 of the policy, number 14, which provides, "... any rental unit in that building structure is vacant, unoccupied, or **under construction** ... ." (Doc. 34, at 7-8) (emphasis in original). Plaintiff argues that "[b]y adding 'under construction' in that [section] the defendant shows that the term under construction is something different and separate than the terms 'vacant' and 'unoccupied.' (Id.). This other section of the policy to which

21

plaintiff refers dealt with "[f]reezing of a plumbing, heating or air conditioning system or a household appliance." (Doc. 30-8 at 31). This section in its entirety provided: "We do not cover loss to any covered property in a building structure or any rental unit at the residence premises under perils ... caused by or resulting from freezing while the building structure or any rental unit in the building structure is vacant, unoccupied or under construction unless you have used reasonable care to: a) maintain heat in the building structure including all rental units; or b) shut off the water supply and drain the system and appliances in building structure." (Id.).

Since Allstate added "under construction", the argument goes, it can be construed that this term is different and separate from the terms "vacant" and "unoccupied", and that Allstate could have added such language to the vacancy clauses in his policy resolving any ambiguity. As stated, the ambiguity must be construed against Allstate since it drafted the policy. Further, plaintiff contends that since the vacancy clause "clearly defines what instances are not covered, i.e.[,] fire due to vandalism in an unoccupied or vacant property", "any instance not listed would be deemed covered, i.e., a property being rehabilitated." (Doc. 34, at 8).

In plaintiff's, November 8, 2012, statement under oath he admitted that

the subject property was rented by tenants until April 15, 2012, and that all three separate rental units were unoccupied as of April 16, 2012. Plaintiff stated that he then began to rehabilitate the property. He stated that he worked on the property from about April 20 until May 20, 2012, when he had surgery. He stated that he did not work on the property again until the beginning of August. The property manager was periodically showing the property to prospective tenants at the time. Plaintiff stated that he did not have keys to the property and that the property manager had the keys. (Doc. 30-4, at 9, 18-23).

In his February 12, 2014 deposition, plaintiff reiterated that the subject property, with three apartments, was rented until April 15, 2012, and that he was aware the property became "unoccupied" as of April 16, 2012, when all three tenants moved out of the property. (Doc. 30-5, at 4). Plaintiff stated that his property manager let him know that the apartments were "unoccupied" as of April 16, 2012. Plaintiff's property manager, Lamandre, testified that the last tenant in plaintiff's property was physically out by the end of April 2012. The other tenants were out prior to that time. Lamandre stated that plaintiff was then present at the property to perform rehab work to update the property "very closely after the last tenant moved out", but stated that plaintiff was only

present on a sporadic or intermittent basis. Lamandre stated that he could not be certain since he was only at the property periodically to show the apartments to prospective tenants, "but based on what [plaintiff] told [him], [plaintiff] was there a lot at the beginning, April and May [2012], but not so much later on" since plaintiff had a health related issue and also had to go to another contracting job. Additionally, Lamandre stated that "no tenants were in the [subject] property between the end of April and August [27, 2012] when the fire took place" and that "nobody was actually living in any of the apartments during that period [end of April through August 27, 2012]."

Allstate contends that based upon plaintiff's and Lamandre's admissions, "it was clear that the [subject property] was vacant and unoccupied for at least one hundred and twenty (120) days prior to the fire." (Doc. 31, at 3). The court does not agree and finds that plaintiff's statement under oath and deposition testimony as well as Lamandre's testimony create disputed facts, under *Chowdhury*, as to whether plaintiff was sufficiently present at the subject property after the tenants moved out in April of 2012, to personally rehabilitate and rebuild parts of the property such that the property was neither vacant nor unoccupied for purposes of the policy. As mentioned above, plaintiff stated that after his surgery he began to work on

24

the property again in the beginning of August, 2012, prior to the fire. The court finds that plaintiff's undisputed presence at the subject property after his tenants moved out on April 15, 2012, to rehabilitate and update the property creates issues of material fact as to whether this rendered the 3-unit rental property unoccupied and vacant, as these terms were contemplated by the parties as expressed in the policy, for purposes of coverage on plaintiff's fire loss claim. Lamandre's testimony also substantiates the fact that after plaintiff's surgery, plaintiff resumed work on the property even though plaintiff worked sporadically due to his health issue.

In the end, the court finds that Allstate has not met its burden of establishing the applicability of the vacancy clause in Policy Form AS84. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d at 206 (insurer bears burden of establishing the applicability of exclusions in insurance contract and exclusions are always strictly construed against insurer) (citations omitted). Thus, Allstate's motion for summary judgment regarding plaintiff's breach of contract claim will be denied.

### 2.    **Bad Faith.**

As both parties recognize:

> 'Bad faith' on part of insurer is any frivolous or
> unfounded refusal to pay proceeds of a policy; it is not

25

necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (*quoting* Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)). To succeed on a bad faith claim, a plaintiff must demonstrate "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Verdetto v. State Farm Fire & Cas. Co., 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011), *aff'd*, 2013 WL 175175 (3d Cir. Jan. 17, 2013) (*quoting* Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997)). Mere negligence, however, is not sufficient to establish a bad faith claim. *See* id. (*citing* Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994)). In addition, a plaintiff must demonstrate both elements of a bad faith claim by clear and convincing evidence. *See* id.

For an insurance company to show that it had a reasonable basis, it need not demonstrate its investigation yielded the correct conclusion, or that its conclusion more likely than not was accurate. Krisa v. Equitable Life Assur.

Soc., 113 F.Supp.2d. 694, 704 (M.D. Pa. 2000). The insurance company also is not required to show that "the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion." Id. Instead, an insurance company must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. Id.

"The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (*quoting* Bostick v. ITT Hartford Group, Inc., 56 F.Supp. 2d 580, 587 (E.D. Pa.1999)). The plaintiff's burden is equally high at the summary judgment stage of litigation, and plaintiff must point to evidence that meets this heavy evidentiary requirement. J.C. Penney, 393 F.3d at 367 (*citing* Kosierowski v. Allstate Ins. Co., 51 F.Supp. 2d 583, 588 (E.D. Pa.1999)). Further, "[i]n a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Bostick v. ITT Hartford Group, Inc.,

56 F.Supp.2d 580, 587 (E.D.Pa.1999) (citation omitted),

Plaintiff essentially maintains that Allstate acted in bad faith by drafting an ambiguous policy and by denying him coverage for his fire loss by unreasonably interpreting the terms "vacant" and "unoccupied" as used in the policy, particularly in light of *Chowdhury*. Allstate tried to distinguish *Chowdhury* by arguing that the relevant provision in that case was considerably less expansive than the provisions at issue in the case at hand. Allstate stated that the Form AS84 Landlords Package Policy clause specifically excluded coverage where a fire results from vandalism in a situation where the dwelling has been vacant or unoccupied for more than 90 consecutive days before the vandalism, and the Standard Fire Policy Endorsement specifically excluded coverage where the property was sitting vacant or unoccupied for 60 consecutive days.

The record demonstrates that Allstate had a factual basis to conclude that the subject property was vacant or unoccupied for more than the specified number of days before the vandalism, and that Allstate had a reasonable basis for denying plaintiff's claim for coverage of the fire loss caused by the vandalism. "A reasonable basis is all that is required to defeat a claim of bad faith." Pilosi, 393 F.3d at 367 (citation omitted).

As discussed in detail above, the court has found that Allstate's interpretation of the terms "vacant" and "unoccupied" was reasonable but that the terms are ambiguous and that there are disputed material facts precluding the entry of summary judgment in its favor. The court has also found that relevant Pennsylvania state law is unsettled on the matter. The court in Bostick, 56 F.Supp.2d at 587, stated that, "[b]ad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy."

Thus, Allstate's summary judgment motion will be **GRANTED** with respect to plaintiff's bad faith claim.


## VI.   CONCLUSION

Accordingly, Allstate's motion for summary judgment, Doc. 30, shall be **DENIED** with respect to plaintiff's breach of contract claim and **GRANTED** with respect to plaintiff's bad faith claim. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 23, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1232-01.wpd